# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ANDRE M. INGRAM,

        Plaintiff,

vs.

CLARK COUNTY SCHOOL DISTRICT, *et al.*,

        Defendants.

Case No.: 2:18-cv-01939-GMN-CWH

**ORDER**

Pending before the Court are the Motions to Dismiss, (ECF Nos. 16, 17), filed by Defendant Clark County School District ("CCSD") and Defendants Kris Patrick ("Patrick"), Aida Rivera ("Rivera"), and Joann V. Laeken ("Laeken") (collectively "Individual Defendants"). Also pending before the Court is Plaintiff Andre Ingram's ("Plaintiff's") Motion for Preliminary Injunction, (ECF No. 28), to which CCSD filed a Response, (ECF No. 31), and Plaintiff filed a Reply, (ECF No. 35). For the reasons stated below, CCSD's Motion to Dismiss, (ECF No. 16), is **GRANTED in part** and **DENIED in part**; the Individual Defendants' Motion to Dismiss, (ECF No. 17), is **GRANTED**; and Plaintiff's Motion for Preliminary Injunction, (ECF No. 28), is **DENIED.**

# I.    BACKGROUND

This case arises from Plaintiff's allegations of workplace discrimination, harassment, and retaliation while he was employed with CCSD as a food service worker. (First Am. Compl. ("FAC") 5:13, 6:2–24, ECF No. 9); (CCSD's Mot. Dismiss ("MTD") 2:3–4, ECF No. 16). Individual Defendants Patrick, Rivera, and Laeken are either Plaintiff's co-workers or supervisors in CCSD's Food Service Department. (FAC 2:8–16). Plaintiff contends that these Individual Defendants and CCSD used illegal workplace practices, such as: obstructing

Plaintiff's efforts to fairly compete for a supervisor position; harassing Plaintiff with derogatory or sexist statements and conduct; and subjecting certain kitchen staff to intolerable work conditions when compared to a "white counterpart kitchen staff at Arbor View High School." (*Id.* 3:3–24).

Plaintiff filed a charge of discrimination against CCSD with the Equal Employment Opportunity Commission ("EEOC") on June 20, 2018, and the EEOC closed the case and issued a right-to-sue letter on July 10, 2018. Plaintiff, proceeding *pro se*, then filed his Complaint with the Court on October 9, 2018, which he amended on November 28, 2018. (Compl. at 1, ECF No. 8); (FAC at 1). That First Amended Complaint ("Amended Complaint") asserts various claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*: (1) discrimination based on race and sex; (2) retaliation based on race and sex; and (3) sexual harassment.[1] (FAC 6:2–24).

On December 18, 2018, CCSD and the Individual Defendants moved to dismiss the Amended Complaint. (ECF Nos. 16, 17). Plaintiff did not file a response; instead, he filed a Motion for Preliminary Injunction on January 14, 2019. (Mot. Prelim. Inj. at 1, ECF No. 28); (Reply 3:15–18, ECF No. 35).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the

---

[1] Plaintiff's Amended Complaint states four claims for relief. However, two of the claims ("Claim I" and "Claim III") equally concern race and sex-based discrimination in violation of Title VII. The Court therefore addresses these claims together.

Page 2 of 14

complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## III. DISCUSSION

Because Plaintiff is appearing *pro se* in this case, the Court liberally construes his pleadings and subjects them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Indeed, *pro se* plaintiffs in civil rights cases must be afforded "the benefit of any doubt." *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

### A. Individual Defendants' Motion to Dismiss

The Individual Defendants move to dismiss Plaintiff's claims against them because Title VII imposes liability on employers, not individual employees. (Individual Defs.' MTD 2:8–9, ECF No. 17). The Ninth Circuit has "long held that Title VII does not provide a separate cause of action against supervisors or co-workers." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007) (citations omitted). The Court therefore dismisses Plaintiff's claims against the Individual Defendants with prejudice because those claims are not legally cognizable.

### B. CCSD's Motion to Dismiss

CCSD moves to dismiss Plaintiff's claims because the supporting allegations "are insufficient to raise a plausible Title VII claim." (CCSD's MTD 6:21–22, ECF No. 16).

Alternatively, CCSD seeks dismissal because Plaintiff's service of the Complaint failed to comply with Federal Rule of Civil Procedure 4. (*Id.* 3:8–13). The Court addresses each argument in turn below.

### 1. *Discriminatory Treatment Based on Race and Sex*

Plaintiff's first claim centers on discriminatory treatment based on race and sex in violation of Title VII. That discriminatory treatment allegedly arose during Plaintiff's application for a "Supervisor II" position with CCSD's Food Service Department, and during an incident of black mold in Plaintiff's workplace at the Kit Carson Elementary School's kitchen. (FAC 3:3–4:10, 6:2).

To survive CCSD's instant motion for dismissal, Plaintiff must provide allegations that: (1) he belonged to a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated employees outside of his protected class were "treated more favorably, or [that] other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *See* 42 U.S.C. § 2000e-2; *Ware v. NBC Nevada Merchants, Inc.*, 219 F. Supp. 3d 1040, 1050 (D. Nev. 2016) (citing *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)).

CCSD mainly moves to dismiss Plaintiff's discriminatory treatment claim because Plaintiff neither provides allegations capable of supporting the fourth element of more favorable treatment to similarly situated employees outside Plaintiff's protected class nor circumstances that give rise to an inference of discrimination. (CCSD's MTD 3:21–4:17). Upon review of the Amended Complaint, the Court agrees with CCSD.

At the time Plaintiff sought the Supervisor II position, Rivera informed Plaintiff that he needed experience working in a high school cafeteria, though this requirement was not in the job posting. (FAC 3:3–9). Plaintiff asserts that this was a discriminatory act which placed him at a disadvantage when he interviewed for the Supervisor II position in December 2017. (*Id.*

18–20). There are no factual allegations, however, to support the claim that, whether written or unwritten, Rivera imposed this experience requirement as a discriminatory act based on Plaintiff's race or sex.

Additionally, no allegations reveal an inference of discrimination based on race or sex surrounding Plaintiff's application process for the Supervisor II position. The closest support for discrimination arises from two allegations in the Amended Complaint: (1) Rivera's alleged "derogatory [and] sexist" comment to Plaintiff of "the girls will never trust you" as justification for Rivera's statement that Plaintiff needed to gain more work experience; and (2) Patrick and Rivera recruited Desiree Irons, a caucasian female, for the Supervisor II position. (*Id.* 3:10–17). Nevertheless, regarding the "derogatory" and "sexist" statement, Plaintiff's allegations do not reveal how employees who were similarly situated to Plaintiff, but outside his protected class, were treated differently by not having been subject to Rivera's speculation of distrust. While Plaintiff himself identifies Rivera's statement as sexist, the allegations do not show that it was Plaintiff's race, sex, or gender as the reason for the distrust, rather than a lack of work experience. Also, relating to the recruitment of Desiree Irons, Plaintiff states that Irons "manages the Arbor View High School Cafeteria." (*Id.* 3:14–17). Plaintiff does not allege that he possesses similar management experience as Irons. The Court thus cannot find that Plaintiff was similarly situated to Irons, or that Patrick and Rivera's recruitment of Irons suggests discrimination based on race or sex rather than Irons's superior qualifications for the Supervisor II position.

Next, concerning the alleged discriminatory treatment based on black mold in Plaintiff's workplace at the Kit Carson Elementary School's kitchen, Plaintiff alleges that the Kit Carson staff had been exposed to black mold without adequate safeguards, while a "white counterpart" staff at Arbor View High School received more favorable treatment. (*Id.* 3:21–4:10). However, there is no comparison explaining how the Arbor View staff suffered similarly severe

conditions, nor is there an explanation of how the Arbor View staff received greater protective support from CCSD. (*See id.* 3:21–4:10). The Court thus cannot discern racial discrimination based on the allegations concerning the Kit Carson staff's exposure to black mold.

Finally, Plaintiff alleges discrimination by pointing to an instance where Rivera and Laeken "intentionally singled [Plaintiff] out amongst his female peers, and accused him of fraudulent accounting practices, and fiduciary neglect." (*Id.* 4:11–15). Plaintiff explains that this singling out was improper because Plaintiff had been compliant with CCSD's policies and practices. (*Id.*). Crucially missing, however, are allegations of an employee outside Plaintiff's protected class who complied with CCSD's policies like Plaintiff, yet did not suffer the same consequences as him. Nor are there allegations to create an inference that it was Plaintiff's protected status, rather than his method of accounting, that served as the basis for him being singled out amongst his female peers. (*Id.* 4:11–15) (stating that he used the policies he was taught in the "Q-course," but not specifying whether any other employee used similar methods).

Altogether, Plaintiff has not sufficiently alleged discrimination by CCSD based on race or sex in violation of Title VII. Plaintiff could, however, provide additional allegations to cure the above-identified deficiencies. The Court therefore dismisses Plaintiff's first claim, but without prejudice.[2]

### 2. *Retaliation*

Plaintiff next claims that CCSD retaliated against him in violation of Title VII. (*Id.* 6:8). Plaintiff accordingly must allege the following to state a plausible retaliation claim: "(1) [he] engaged in a protected activity, (2) the [employer] subjected [him] to an adverse employment

---

[2] Besides Plaintiff's failure to plead facts that support the fourth element of his discrimination claim, Plaintiff also does not provide allegations to show how he was qualified for his current position or the Supervisor II position as stated in the job posting's written requirements. Consequently, if Plaintiff elects to file an amended complaint, he must include facts that can support all elements of his discrimination claim.

action, and (3) a causal link exists between the protected activity and the adverse action." *Manatt v. Bank of Am. NA*, 339 F.3d 792, 800 (9th Cir. 2003).

CCSD argues that Plaintiff's retaliation claim fails because Plaintiff did not engage in a protected activity. (CCSD MTD 6:20–21). The Court, however, disagrees. Plaintiff alleges he submitted a written complaint to Defendant Patrick on August 21, 2017, "alleging discriminatory, prohibited personnel hiring practices" within CCSD's Food Service Department.[3] (FAC 2:20–22). Plaintiff's allegations do not specify the exact type of discriminatory actions that he voiced in the written complaint, but Plaintiff alleges that Patrick "should have forwarded the complaint, to the Diversity and Affirmative Action Department." (*Id.* 2:23–4:2). Thus, taking all inferences in the light most favorable to Plaintiff, his written, informal complaint shows an attempt to notify supervisors about discrimination based on race and sex in violation of Title VII. That attempt resembles recognized forms of engagement in a protected activity under Title VII. *See Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 506 (9th Cir. 2000) (allowing a retaliation claim based on informal protest of an alleged discriminatory policy).

Plaintiff also provides allegations supporting the second element of his retaliation claim. Specifically, Plaintiff alleges three adverse employment actions: (1) when he was placed at an unfair disadvantage during the interview process, and eventually not hired, for the Supervisor II position; (2) when Patrick, Rivera, and Laeken used a false witness statement to justify adding theft accusations to his annual performance evaluation; and (3) when Laeken replaced him on his shift without prior notice. (FAC 3:3–20, 4:16–18, 5:1–2). These actions are similar to the "wide array of disadvantageous changes in the workplace" that can constitute adverse

---

[3] In his Motion for Preliminary Injunction, Plaintiff attaches what he alleges to be the email complaint that he sent to Patrick. (*See* Mot. for Prelim. Inj. 1–4, ECF No. 28-1). Because this document was not attached to any Complaint, and because no facts allow the Court to assume the document's authenticity, the Court will not consider its contents at this stage. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)

employment actions. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008); *Hashimoto v. Dalton*, 118 F.3d 671, 674 (9th Cir. 1997) (finding "dissemination of adverse employment references" to be adverse employment action); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Transfers of job duties and underserved performance ratings . . . constitute adverse employment decisions.").

Finally, concerning the third element, Plaintiff sufficiently alleges a causal link between his protected activity and the first adverse employment action mentioned above. Namely, roughly three months after Plaintiff provided Patrick with his written complaint about CCSD's discriminatory actions, Patrick apparently placed Plaintiff at an unfair disadvantage during the interview process for the Supervisor II position. (FAC 3:18–20). Plaintiff also alleges that Patrick, among other Defendants, imposed unnecessary requirements on Plaintiff to even be considered for the position. (*Id.* 3:3–9). Plaintiff does not state the exact date when Patrick first imposed these unnecessary requirements; but, at this stage, the Court can infer that it happened before Plaintiff's December 2017 interview. (*See id.* 2:17–3:9). Accordingly, taking all allegations in the light most favorable to Plaintiff, Patrick's knowledge of Plaintiff's written complaint—paired with obstructive actions leading up to Plaintiff's interview a few months later—present a plausible causal link that can survive CCSD's current motion to dismiss. *See Wheeler v. Terrible Herbst Oil Co.*, No. 2:10-cv-00866-GMN-NJK, 2013 WL 3974887, at *5 (D. Nev. July 30, 2013); *cf. Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

By contrast, the Complaint does not provide allegations to support a causal link between Plaintiff's protected activity and the other above-mentioned adverse employment actions. Indeed, the Amended Complaint does not state that Defendants, other than Patrick, knew of Plaintiff's August 21, 2017 written complaint. Nor does Plaintiff specify a date when the false accusations of theft appeared on Plaintiff's annual performance evaluation, or when he was replaced during his shift without notice. (*See* FAC 5:1–2). Without a defendant having

knowledge of Plaintiff's protected activity, and without a temporal reference point for the alleged adverse actions, the Court cannot infer a causal link. *See Yartzoff*, 809 F.2d at 1376.

Plaintiff may, however, be able to allege additional facts that show a causal link between Plaintiff's protected activity and the other alleged adverse actions. Thus, though the Court dismisses Plaintiff's retaliation claim in part as explained above, dismissal is without prejudice.

### 3. *Sexual Harassment*

Plaintiff's third claim concerns sexual harassment based on a hostile work environment in violation of Title VII. (FAC 6:21–24). To state a claim, Plaintiff must allege that: (1) he was subjected to verbal or physical conduct because of his sex; (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). Moreover, "the working environment must both subjectively and objectively be perceived as abusive." *Id.* (citations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficiently severe or pervasive to change the conditions of employment and create a Title VII claim. *Id.* at 1055–56.

For Plaintiff's sexual harassment claim, he complains of three incidents happening on two separate days and involving two female supervisors: (1) on March 23, 2018, Rivera and Laeken crowded, corralled, and controlled Plaintiff's movements "until he was isolated into a small personal space behind his desk"; (2) on April 2, 2018, that same conduct occurred again; and (3) on April 2, 2018, Laeken allegedly made Plaintiff sit next to her for two hours during the lunch hour behind Plaintiff's desk at "an inappropriate, unprofessional, proximity between herself and [Plaintiff]." (FAC 4:21, 5:3). Plaintiff alleges that, during this third incident, he tried to avoid physical contact with Laeken, but their outer thighs inevitably rubbed together due to the small space behind Plaintiff's desk. (*Id.* 8–9).

These allegations fail to support the first element of a sexual harassment claim under Title VII because they do not reveal harassment based on sex, gender, or of a sexual nature or meaning. Plaintiff's allegations instead fall toward Laeken and Rivera violating a "general civility code," for which Title VII does not provide protection. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted) ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"). Moreover, the circumstances of the alleged harassment, as alleged in the Amended Complaint, do not reveal disadvantageous treatment of Plaintiff to which members of the other sex are not exposed. *See, e.g.*, *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998) (explaining that the focus of a sexual harassment claim is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed") (citations omitted); *EEOC v. National Ed. Ass'n, Alaska*, 422 F.3d 840, 842 (9th Cir. 2005).[4]

While the current allegations in Plaintiff's Amended Complaint do not support a claim for sexual harassment in violation of Title VII, Plaintiff may be able to cure the deficiencies. The Court thus dismisses this claim without prejudice. *See DeSoto*, 957 F.2d at 658.

### 4. *Improper Service*

In addition to dismissal on the merits, CCSD moves to dismiss Plaintiff's Amended Complaint, or alternatively quash service, because Plaintiff did not properly serve it as required

---

[4] Plaintiff alleges that, around the time of the complained-of sexual harassment, Laeken "humiliated the plaintiff when she replaced him on shift . . . without any prior notice." (FAC 5:1–2). However, the Court does not infer this as related to the sexual harassment claim because Plaintiff refers to this as an act of retaliation, which, according to the Amended Complaint, stems from Plaintiff's written complaint to Defendant Patrick about discriminatory hiring practices. Further, other adverse actions around the time of the alleged sexual harassment, such as when Patrick, Rivera, and Laeken "intentionally singled [Plaintiff] out among his female peers," relate to allegations of fraudulent accounting practices and neglect by Plaintiff, not harassment based on sex or of a sexual nature. (*See id.* 4:11–15). If Plaintiff seeks to include these actions as part of his sexual harassment claim, he must clarify that intention upon amendment of his Amended Complaint.

1  by Federal Rule of Civil Procedure ("FRCP") 4(j)(2). (CCSD's MTD 6:9–13).  FRCP 4(j)(2)
2  provides the method for serving a state or local government entity, and it declares that service
3  may be completed by serving the summons and complaint on the state's chief executive officer
4  or in a manner prescribed under the state's law. Fed. R. Civ. P. 4(j)(2); *see, e.g.*, *Uranga v.*
5  *Adams*, No. 3:10-cv-00014-RCJ-RAM, 2011 WL 147909, at *4 (D. Nev. Jan. 14, 2011) ("A
6  state-created governmental organization must be served by service on the chief executive
7  officer (the governor) or by the manner prescribed by state law for serving such a defendant.").

8  Concerning the manner prescribed by state law, Nevada's rules provide the relevant
9  guidelines here.  Nevada Rule of Civil Procedure ("NRCP") 4 allows service to a political
10 subdivision, such as CCSD, by providing the summons and complaint "to the presiding officer
11 of the governing body of the political subdivision, or an agent designated by the presiding
12 officer to receive service of process." Nev. R. Civ. P. 4.2(d)(3).

13 Here, Plaintiff delivered his Complaint through the US Marshall's service to Debra
14 Saletta at CCSD's location of 2832 East Flamingo, Las Vegas, Nevada 89121. (Summons at 1,
15 ECF No. 11).  CCSD claims that Ms. Saletta is a secretary in its human resources division, and
16 that she could not receive service on behalf of CCSD. (CCSD's MTD 6:9–13).  The Court's
17 docket, however, shows a proof of service by the US Marshalls Service with a statement made
18 under the penalty of perjury that Ms. Saletta is an individual "designated by law to accept
19 service of process on behalf of Clark County School District." (Summons at 3).  That proof of
20 service constitutes prima facie evidence that Plaintiff properly served CCSD, and CCSD must
21 present more than mere allegations to challenge the validity of that service. *See S.E.C. v.*
22 *Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) ("A signed return of service
23 constitutes prima facie evidence of valid service which can be overcome only by strong and
24 convincing evidence.").  CCSD does not provide evidence or support to refute that signed proof

of service. Thus, CCSD has not satisfied its burden to show that service of process was improper.

### C. Motion for Preliminary Injunction

Rather than filing a Response to CCSD's Motion to Dismiss, Plaintiff filed a Motion for Preliminary Injunction, (ECF No. 28). In that Motion, Plaintiff requests injunctive relief to prevent CCSD's discriminatory employment practices. (Mot. Prelim. Inj. 8:23–9:1, ECF No. 28). Consequently, to earn the requested preliminary injunction, Plaintiff must show: "(1) [Plaintiff] is likely to succeed on the merits; (2) [Plaintiff] is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in [Plaintiff's] favor; and (4) an injunction is in the public interest." *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015).

Here, as explained above, Plaintiff has not demonstrated a likelihood of success in his claims. Similarly lacking is evidence to show that Plaintiff is likely to suffer an immediate, irreparable injury without preliminary injunctive relief. Though Plaintiff seeks to "eradicate racism and discriminatory practices from society," (Mot. Prelim. Inj. 9:8–21), Plaintiff cannot rely solely on his past injuries for preliminary injunctive relief. Instead, he must provide facts specific to this case showing a credible threat of immediate and irreparable injury requiring injunctive relief prior to a resolution of this case on the merits. *See, e.g.*, *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiff does not carry his burden to make such a showing. Plaintiff's Motion for a Preliminary Injunction is therefore denied.[5]

---

[5] Because Plaintiff has not satisfied the first two elements of the preliminary injunction test, the Court need not address the remaining elements of public interest and a balance of hardships.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that CCSD's Motion to Dismiss, (ECF No. 16), is **GRANTED in part** and **DENIED in part.** Plaintiff's first claim for race and sex-based discrimination is **DISMISSED without prejudice**. Plaintiff's second claim for retaliation is **DISMISSED, in part, without prejudice**. Plaintiff's third claim for sexual harassment is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Individual Defendants' Motion to Dismiss, (ECF No. 17), is **GRANTED**. Plaintiff's claims against the Individual Defendants are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 28), is **DENIED.**

**IT IS FURTHER ORDERED** that, if Plaintiff elects to amend his claims, Plaintiff shall have twenty-one (21) days from the date of this Order to file a Second Amended Complaint.

**DATED** this __21__ day of May, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court